FILED

July 19, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 1:01 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MURFREESBORO

| | | |
|---|---|---|
| NORVIN SEVILLA-PALMA | ) | Docket No.: 2016-05-0242 |
| Employee, | ) | |
| v. | ) | State File Number: 17382-2016 |
| WAUFORD AIR CONDITIONING, | ) | |
| INC. | ) | |
| Employer, | ) | Judge Dale Tipps |
| And | ) | |
| AUTO-OWNERS INS. CO. | ) | |
| Insurance Carrier. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER DENYING REQUESTED BENEFITS

This matter came before the undersigned workers' compensation judge on July 12, 2016, on the Request for Expedited Hearing filed by the employee, Norvin Sevilla, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is the compensability of Mr. Sevilla's eye injury and his entitlement to medical treatment and temporary disability benefits. The central legal issue is whether the evidence is sufficient for the Court to determine that the employer, Wauford Air Conditioning, Inc., is likely to establish at a hearing on the merits that Mr. Sevilla's violation of a workplace safety rule bars his claim. For the reasons set forth below, the Court holds Mr. Sevilla is not entitled to the requested medical and temporary disability benefits at this time. [1]

## History of Claim

The following facts were established at the Expedited Hearing on July 12, 2016. Mr. Sevilla is a thirty-four-year-old resident of Rutherford County, Tennessee, who worked as an HVAC helper for Wauford for approximately one month. On February 19, 2016, he and three other Wauford employees were working at Summit Medical Plaza, changing an air conditioning unit. One of the technicians accidentally cut a water line,

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

1

which required repairs and a cleanup of the water in one of the medical offices.

Mr. Sevilla testified that he and Michael Wauford, the owner's son, were in another room while the other workers were cleaning up the spill. Mr. Wauford told him to climb a ladder and drill a hole in the ceiling in order to hang an air conditioning unit. Mr. Sevilla did so without wearing eye protection because Mr. Wauford told him to do it quickly. Mr. Sevilla insisted Wauford provided him no safety glasses or any other safety equipment.

While drilling the hole, debris fell into Mr. Sevilla's eye. He reported it to Mr. Wauford, who told him he should try to flush his eye out with water. Mr. Sevilla didn't know how serious the condition was, so he went home for the weekend after work. Mr. Sevilla testified that when his eye pain failed to improve, he asked Wauford for treatment but they refused. Therefore, he sought treatment on his own at Nashville General Hospital on February 23, 2016.

Records from Nashville General Hospital show the attending physician diagnosed a corneal abrasion and referred Mr. Sevilla for follow-up at the Vanderbilt University Medical Center (VUMC) Ophthalmological Clinic. (Ex. 3 at 36-327.) Mr. Sevilla saw Dr. Eric Brown at VUMC on March 30, 2016. The office note from that date indicates Mr. Sevilla began treating at VUMC on February 24, 2016, and underwent procedures to remove foreign bodies from his right eye. On April 27, 2016, Dr. Brown diagnosed decreased vision due to stromal scarring and prescribed eyeglasses for astigmatism. *Id*. at 61-65. Dr. Brown completed a Form C-30A Final Medical Report on June 7, 2016. He noted Mr. Sevilla reached maximum medical improvement (MMI) on that date. He also indicated Mr. Sevilla was limited to restricted duty from May 23, 2016, to March 30, 2016.

On cross-examination, Mr. Sevilla acknowledged he suffered a work injury to his right eye while working for another employer in June 2015. He said he was leaving work when someone asked him to drill a hole in a steel truss, which resulted in flakes getting in his eye. He blamed his supervisors for trying to get him hurt. As a result of that injury, he received treatment at Nashville General.

Records from Nashville General show that Mr. Sevilla gave a history of getting a metal shaving in his eye while installing an air conditioning unit on June 8, 2015. He reported he was not wearing goggles at the time. The treating physician instructed Mr. Sevilla to always wear protective goggles when using machinery.

Mr. Sevilla also acknowledged the importance of wearing eye protection, and the danger of drilling without it. He had a pair of safety glasses in his own bag, but testified the bag was on another floor of the facility. He contended Michael Wauford would not allow him to take the time to go and get the bag, but specifically ordered him to drill the

2

hole without his safety glasses. Mr. Sevilla explained he could not carry his safety glasses around with him because he had to carry too much equipment. He also denied there was a cart in the room with tools or eye protection on it at the time of his accident.

Mike Heithcock testified he was one of Mr. Sevilla's supervisors and has worked for Wauford for nineteen years. He did not witness the actual injury, but said there was a cart of tools in the room where Mr. Sevilla was injured. These included the drill used by Mr. Sevilla and safety glasses.

Mr. Heithcock felt Wauford was diligent in enforcing its safety rules, and he observed Mr. Sevilla wearing his safety glasses on other occasions. Both Mr. Heithcock and Michael Wauford told Mr. Sevilla to wear safety glasses when using a drill. The owner of the business, Jim Wauford, emphasized this point after learning of Mr. Sevilla's prior eye injury. Mr. Heithcock testified that if he had observed Mr. Sevilla drilling without eye protection, he would have insisted that he put on some goggles.

John Messner testified he has worked for Wauford as a helper for about one year, assisting the technicians as necessary, including picking up supplies. He stated Wauford had a rule requiring eye protection when drilling and his supervisors did not tolerate any violations of the safety rules. Wauford emphasized the eye protection rule to everyone, including Mr. Sevilla, after they learned of Mr. Sevilla's prior eye injury. If a job needed safety equipment, Wauford allowed Mr. Messner to get it and use it.

There were already two pairs of safety glasses at the jobsite, so the owner, Jim Wauford, sent Mr. Messner to Home Depot to purchase two more to take to the jobsite. They kept two pairs of safety glasses on the tool cart in the room where Mr. Sevilla was injured, and they were available for him to use.

Michael Wauford is Jim Wauford's son and has worked in the family business for ten to fifteen years. He was the supervisor on site for the Summitt Medical Plaza job. He testified Wauford had a rule that workers must wear safety glasses when drilling overhead, and safety glasses were on the cart with the drill. He personally told Mr. Sevilla about this rule, just about every time he drilled, and Mr. Sevilla had always used the glasses when he used the drill.

Mr. Wauford and the other workers were cleaning up water from the broken pipe, so he was not present in the room when Mr. Sevilla was injured. He denied telling Mr. Sevilla to hurry up and drill the hole without safety glasses so that everyone could go home. Mr. Sevilla told him he did not put on the glasses because he was in a hurry.

Jim Wauford testified he began the business with his father in 1974. He currently has six employees. He is responsible for setting safety policies for the company, which includes attending yearly OSHA training courses. While he does not have formal safety

meetings, he emphasizes safety instructions to the workers while on the job. The company has never had to discipline anyone for failure to follow safety rules, but would have no tolerance for such a violation.

Because they were installing individual ceiling units on the Summitt job, he made sure there were adequate goggles available and reminded everyone to wear them every time they drilled. After Mr. Sevilla's accident, he told Mr. Wauford he did not wear his safety glasses because he was in a hurry.

Mr. Sevilla filed a Petition for Benefit Determination on March 18, 2016, seeking medical and temporary disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. Mr. Sevilla filed a Request for Expedited Hearing.

At the Expedited Hearing, Mr. Sevilla asserted he was entitled to medical treatment, including the glasses prescribed by Dr. Brown. He denied Wauford had any safety policies or rules, and he relied on the absence of any documentation or signature sheets reflecting safety policies or safety meetings. He also argued Wauford never objected to any unsafe practices, including his standing on top of a stepladder when this injury occurred. He contended he never had any injuries until working for smaller companies, like Wauford, because they did not take safety seriously.

Mr. Sevilla argued his failure to wear safety glasses at the time of his injury was Wauford's fault. Michael Wauford knew there was a safety rule and specifically told him to violate the rule by drilling without eye protection. Mr. Sevilla needed the job, so he followed his supervisor's orders, even though he knew it was unsafe.

Mr. Sevilla also argued Wauford cared nothing for his safety because the other employees and the supervisors did not like him. He was the "new guy" on the crew, and the others bossed him around and made him do all the drilling. They called him names and threatened to fire him. He claimed the others knew about his prior eye injury and tried to get him injured on purpose.

Wauford did not contest notice or causation for the purpose of the Expedited Hearing. However, it countered that Mr. Sevilla's failure to use required safety equipment bars his recovery of any workers' compensation benefits.[2]

## Findings of Fact and Conclusions of Law

The following legal principles govern this case. Because this is an Expedited

---

[2] Wauford denied Mr. Sevilla's claim on March 10, 2016. The stated basis for denial was "failure to use safety device."

4

Hearing, Mr. Sevilla need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at \*7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id*.; Tenn. Code Ann. § 50-6-239(d)(1)(2015). In analyzing whether he has met his burden, the Court will not remedially or liberally construe the law in his favor, but instead shall construe the law fairly, impartially, and in accordance with basic principles of statutory construction favoring neither Mr. Sevilla nor Wauford. *See* Tenn. Code Ann. § 50-6-116 (2015).

Applying these principles to the facts of this case, the Court first finds Mr. Sevilla has shown he suffered an injury to his right eye arising primarily out and in the course and scope of his work for Wauford. The issue then becomes whether Wauford appears likely to meet its burden of proving the necessary elements of its affirmative defense of failure to use a safety device.

The affirmative defense for failure to use a safety device set forth in Tennessee Code Annotated section 50-6-110 (a)(4) (2015) provides that no compensation shall be allowed for any injury due to "[t]he employee's willful failure or refusal to use a safety device." The controlling case for this defense is *Mitchell v. Fayetteville Public Utilities,* 368 S.W.3d 442 (Tenn. 2012),[3] which the Appeals Board cited as applicable to cases under the Reform Act of 2013 in *Gonzales v. ABC Professional Tree Services,* No. 2014-06-0015, 2014 TN Wrk. Comp. App. Bd. LEXIS 2 (Tenn. Workers' Comp. App. Bd. Nov. 10, 2014). The Supreme Court in *Mitchell* held that, in order to successfully defend a workers' compensation claim on the basis of willful misconduct, willful disobedience of safety rules, or willful failure to use a safety device, the employer must prove: (1) the employee's actual, as opposed to constructive, notice of the rule; (2) the employee's understanding of the danger involved in violating the rule; (3) the employee's bona fide enforcement of the rule; and, (4) the employee's lack of a valid excuse for violating the rule. *Mitchell,* 368 S.W.3d at 453. The Court will assess each of these criteria below in the same sequential order.

With regard to item one, the Court finds Mr. Sevilla had actual notice of the rule that employees were to wear eye protection when using the drill. Although he denied Wauford had any safety policies or rules, this testimony is not credible when weighed

---

[3] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at \*13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). The Court notes remedial application of the law played no role in the outcome of *Mitchell*.

against the testimony of the other witnesses. Further, Mr. Sevilla later testified that Michael Wauford knew there was a safety rule, but told him to violate the rule.

Regarding the second factor, Mr. Sevilla clearly understood the danger involved in violating the rule. He suffered an almost identical injury one year before this incident as a result of his failure to wear safety glasses while working for another employer. Further, he admitted on cross-examination that he knew it was important to wear eye protection, and he was aware of the danger of drilling without it.

The parties presented little evidence as to the third *Mitchell* element – Wauford's bona fide enforcement of the eye protection rule. There was no testimony or other evidence that any employee had actually violated the rule in the past and then escaped discipline by Wauford. In fact, Jim Wauford testified the company has never had to discipline anyone for failure to follow safety rules. From this fact, as well as the credible testimony from Mr. Wauford and his employees that he constantly reminded everyone to wear eye protection, the Court concludes that the rule was routinely communicated, and that these reminders were an effective enforcement of the rule.

As for the fourth criteria, the Court further finds Mr. Sevilla failed to establish a valid excuse for violating the rule. He told Jim and Michael Wauford that the reason he did not use the safety glasses was that he was in a hurry. This is insufficient justification for disobeying the rule, especially when eye protection was available on the same cart as the drill. There is no evidence this was any sort of emergency requiring such haste that Mr. Sevilla could not put on a pair of glasses before operating the drill. Moreover, the Appeals Board expressly rejected a similar argument, stating: "Even if the foreman was screaming at Employee, the explanation that the foreman was rushing Employee simply does not qualify as a 'plausible' explanation. As stated by the trial judge, feeling rushed is simply not a plausible explanation for the noncompliance." *Gonzales,* 2014 TN Wrk. Comp. App. Bd. LEXIS 2, at *29. Further, as the *Mitchell* Court noted, "most safety rules and safety devices do entail some inconvenience, discomfort, or loss of speed as the price of increased safety." *Id.* at 455.

The Court recognizes that Mr. Sevilla disputes most the factual findings upon which Wauford relies for its safety defense. However, the weight of the evidence supports these findings. To the extent testimony conflicts, the Court finds Mr. Sevilla's testimony to be less credible. An injured worker should not be penalized simply for being a poor historian, but Mr. Sevilla's testimony was inconsistent and variable. Further, some of his statements were simply not believable, such as his claim that his employer, supervisors, and co-workers were intentionally trying to get him injured.[4] The Court recognizes the possibility of bias on the part of the current Wauford personnel, but

---

[4] This is especially true in light of his testimony that his previous eye injury was due to his employer at that time trying to get him hurt.

notes their testimony appeared steady, forthcoming, and reasonable, which, according to the Tennessee Supreme Court, are indicia of reliability. *See Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014).

Therefore, as a matter of law, Wauford has come forward with sufficient evidence from which this Court concludes that, at a hearing on the merits, it is likely to establish Mr. Sevilla's willful failure to use a safety device.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Sevilla's claim against Wauford and its workers' compensation carrier for the requested medical and temporary disability benefits is denied at this time.

2. This matter is set for an Initial (Scheduling) Hearing on August 10, 2016, at 10:30 a.m.

**ENTERED this the 19th day of July, 2016.**

_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Dale Tipps, Court of Workers' Compensation Claims.  You must call 615-741-2112 or toll free at 855-874-0473 to participate.**

**Please Note:  <u>You must call in on the scheduled date/time to participate.</u>  Failure to call in may result in a determination of the issues without your further participation.  All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board.  To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:
1. Affidavit of Norvin Sevilla
2. June 7, 2016 letter from Dr. Eric Brown
3. Indexed medical records
4. Form C-42 Panel of Physicians
5. Form C-23 Notice of Denial
6. First Report of Injury
7. Wage Statement
8. Medical bills
9. HealthWorks Medical Examination Report
10. Discharge documents from Nashville General Hospital
11. Work statements from Dr. Brown
12. C-30A Final Medical Report of Dr. Brown
13. Affidavit of Kelly Elmore and transcript of Mr. Sevilla's recorded statement

Technical record:[5]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Expedited Hearing Brief

---

[5] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Requested Benefits was sent to the following recipients by the following methods of service on this the 19th day of July, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Norvin Sevilla-Palma | | | X | norvansevilla@yahoo.com |
| David Drobny | | | X | ddrobny@manierherod.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

10